NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4548
_____

IN RE: DIET DRUGS (PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGIATION

Ruth A. Sanders,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 99-cv-20593; MDL Nos. 11-md-1203 and 16-md-1203)
District Judge:  Hon. Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2014

Before:  RENDELL, CHAGARES, and JORDAN, *Circuit Judges*.

(Filed: July 14, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge.*

Ruth Sanders appeals an order of the United States District Court for the Eastern

District of Pennsylvania denying her recovery under the terms of the Diet Drug

Nationwide Class Action Settlement Agreement ("Settlement Agreement").  We will

affirm.

## I.    Background

This appeal relates to the settlement of multi-district products liability litigation regarding the diet drugs Pondimin® and Redux®, previously sold by American Home Products Corporation ("AHP").  *See In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 180-81 (3d Cir. 2008).  In November 1999, Wyeth, the successor-in-interest to AHP, joined plaintiffs' representatives in the Settlement Agreement, which the District Court approved.  *See id.* at 181.  Under the terms of the Settlement Agreement, Wyeth was required to contribute funds, placed in a trust, for the payment of claims.  *See id.* at 180.  The resulting AHP Settlement Trust (the "Trust"), acting through its trustees and claims administrator, administers and reviews claims to determine the benefits, if any, that a class member is qualified to receive under the terms of the Settlement Agreement.  *See id.*[1]

Sanders,[2] a class member, sought compensation benefits under the Settlement Agreement.  She based her claim on an echocardiogram performed in 2002 after she had

---

[1] In several prior decisions, we have provided a detailed description of the Diet Drugs litigation.  *See*, *e.g.*, *In re Briscoe*, 448 F.3d 201, 206-08 (3d Cir. 2006); *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 147-48 (3d Cir. 2005); *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 389-92 (3d Cir. 2004); *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 225-29 (3d Cir. 2002).  We will therefore limit our discussion to the essential facts of the instant appeal.

[2] Sanders is one of three claimants who have appealed simultaneously through the same counsel, the others being Elizabeth Lassetter (Case No. 13-4730) and Tonya Marler (Case No. 13-4731).  All three relied on the same attesting physician in submitting their claims; they appeal the same issue – whether there was a reasonable medical basis to conclude they all suffered from moderate mitral regurgitation; and they raise the same arguments.  The briefs on appeal are almost identical, as are the  District Court's opinions

2

ingested Pondimin for 240 days. Having reviewed the echocardiogram, an attesting physician, Dr. Howard Brazil, attached an affidavit (the "Green Form") to her claim, in which he stated that she has "moderate mitral regurgitation" (Trust Supp. App. at 19), meaning the heart valve separating her upper and lower heart chambers fails to close properly, causing leakage. Under the Settlement Agreement, moderate mitral regurgitation is one of the qualifying medical conditions for compensation.[3] Upon initial review, the Trust's auditing cardiologist agreed that there was a "reasonable medical basis"[4] to support Dr. Brazil's representations and that Sanders's claim was potentially payable. (Trust Supp. App. at 34.)

Unfortunately, the Trust was inundated with fraudulent claims that included manipulated echocardiogram test results. *See In re Diet Drugs*, 543 F.3d at 182 n.4. In light of that problem, and during the pendency of Sanders's claim, the Seventh Amendment to the Settlement Agreement was agreed to and implemented. The Seventh Amendment provided two options to claimants who had not yet received post-audit approval and whose claims indicated signs of material misrepresentation: either

---

regarding each claimant. For efficiency's sake, then, we designate this as the primary opinion, and our opinions regarding Lassetter's and Marler's appeals draw from it.

[3] Sanders was also diagnosed with an "ejection fraction" of 50-60%. The District Court found no reasonable medical basis for any of those diagnoses, but Sanders only appealed its determination regarding mitral regurgitation. We likewise only address that issue.

[4] Under the Settlement Agreement Audit Rules, a "reasonable medical basis" is the standard that an auditing cardiologist applies in determining the validity of a medical diagnosis serving as the basis for a claim. (Class Counsel Supp. App. at 125b.) *See, e.g.*, *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d at 183-84.

participate in new procedures, including additional medical reviews of submitted evidence or opt out of the Settlement's Seventh Amendment and have their claims re-audited "to determine whether there were any intentional material misrepresentations made in connection with the Claim." (App. at A5.) Sanders's claim fell within the scope of the Seventh Amendment, and she chose the latter option. On March 6, 2007, the Trust issued a determination letter rejecting Sanders's claim based on substantial evidence of intentional material misrepresentation. The letter included a declaration of another auditing cardiologist, Dr. Joseph Kisslo, who, in addition to agreeing with the Trust's ultimate determination of intentional misrepresentation, concluded that there was no reasonable medical basis for finding moderate mitral regurgitation based on Sanders's echocardiogram.

Sanders, disagreeing with that determination, submitted a Notice of Contest of Post Audit Determination pursuant to Audit Rule 18 of the Settlement Agreement. She attached a supplemental affidavit from Dr. Brazil, as well as affidavits from the owner of the company that performed the echocardiogram and a sonographer, all attesting that the echocardiogram was performed according to the Settlement Agreement's criteria. After reviewing those additional materials, the Trust reaffirmed in a Final Post Audit Determination that it would deny Sanders compensation benefits, because of substantial evidence of intentional material misrepresentations.

Sanders formally disputed the Trust's Final Post Audit Determination, and the Trust subsequently applied to the District Court to require Sanders to show cause why her claim should be paid. The District Court issued a show-cause order to Sanders and

4

referred her claim to a Special Master, who in turn appointed a Technical Advisor, Dr. Gary Vigilante, to review the claim. Dr. Vigilante issued a Technical Advisor Report, as required by the Settlement Agreement. In the report, Dr. Vigilante agreed with Dr. Kisslo that there was no reasonable medical basis for Dr. Brazil's finding of moderate mitral regurgitation. He also agreed that the echocardiogram study "was not conducted in a manner consistent with medical standards." (Trust Supp. App. at 167.) Sanders responded to Dr. Vigilante, arguing that there could be no "intentional material misrepresentation" in connection with Sanders's claim because four different cardiologists were able to render an opinion on the echocardiogram. (Trust Supp. App. at 172.)

The show-cause record, including Dr. Vigilante's report and the parties' statements of the case, was then submitted to the District Court. After reviewing the record, the Court found that Sanders had failed to meet her burden of proving that a reasonable medical basis existed to support her claim. It declined to reach the misrepresentation issue. The Court thus affirmed the Trust's denial of her claim. Sanders timely appealed.

## II.    Discussion[5]

On appeal, Sanders brings six arguments, only two of which warrant more than passing discussion: first, that the evidence in the record met the burden of proof for establishing a reasonable medical basis for Dr. Brazil's Green Form, and, second, that the Court erred by deputizing the Technical Advisor with judicial power. Both arguments are unpersuasive.[6]

The District Court's determination was not an abuse of discretion. "The test is not what this court would have done under the same circumstances; that is not enough. We

---

[5] The District Court had jurisdiction over all terms of the Settlement Agreement under 28 U.S.C. §§ 1332 and 1407. We exercise jurisdiction over a final order of the District Court pursuant to 28 U.S.C. § 1291. "We review a District Court's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion." *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d at 184 n.10. An abuse of discretion may be found if the District Court's decision "rest[s] on a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (citation omitted) (internal quotation marks omitted).

[6] Sanders's arguments regarding due process and fraud, as well as those based on pretrial orders and the Settlement Agreement itself, are unfounded. The Settlement Agreement expressly authorized the District Court to deny a claim "[i]f the Court determines that there was no reasonable medical basis to support a material representation made by a physician in support of a Claim." (Class Counsel Supp. App. at 126b.) It also allowed the Court to direct "such additional audits and/or adopt such additional claims administration procedures as the Court deems appropriate." (*Id.*) Thus, the Court was permitted to re-audit Sanders's claim and rule on a reasonable medical basis as opposed to intentional misrepresentation, and Sanders was on notice of the Settlement Agreement setting forth the Court's capabilities. Sanders's cited, extra-circuit authority, *In re Deepwater Horizon*, Nos. 130315-16, -30329, -31220, 2014 WL 2118983 (5th Cir. May 19, 2014), which she includes in a supplemental letter, is not applicable here; the Fifth Circuit determined that the claims adjustor in that case exceeded his authority by requiring claims to meet a condition for approval that the settlement agreement expressly removed from consideration, *id.* at *1-2. As for fraud, the Settlement Agreement does not require the Trust or the Court to prove that cause of action in order to deny a claim.

must feel that only one order could have been entered on the facts." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001) (quotation marks omitted) (quoting *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977)). Sanders fails to show that the only conclusion that could be drawn from her echocardiogram is that she suffered from moderate mitral regurgitation. As the District Court noted, she failed to rebut the opinions of Dr. Vigilante and Dr. Kisslo on that issue. She merely stood on her own cardiologists' affirmations, which only disagree with those findings. But disagreement, without more, does not foreclose contrary conclusions.[7] Because Sanders cannot demonstrate that the District Court's determination was an abuse of discretion, her argument that she met her burden to show a reasonable medical basis for her condition fails.

As to the issue concerning the Technical Advisor, the Settlement Agreement Audit Rules permit a Special Master to assign a Technical Advisor to review the record and to prepare a report to the District Court "setting forth his/her opinions regarding the issue(s) in dispute in the audit." (App. at A932.) The Technical Advisor also "act[s] as a sounding board for the judge – helping the jurist to educate himself in the jargon and theory disclosed by the testimony and to think through the critical technical problems." *Reilly v. United States*, 863 F.2d 149, 158 (1st Cir. 1988). After reviewing the District

---

[7] Sanders erroneously argues that the District Court was bound by the opinion of the original auditing cardiologist, who found signs of moderate mitral regurgitation. However, we agree with the Court that "[s]imply because an undeserving claim has slipped through the cracks so far is no reason for this court to put its imprimatur on a procedure which may allow it to be paid. ... [W]e will not ignore the findings of other cardiologists simply because the claim has previously passed audit." (App. at A15 n.10 (first alteration in original) (citation omitted).)

Court's memorandum opinion and the show-cause record, we are satisfied that the Court considered the entire record, not just what the Technical Advisor said. Nothing here indicates a simple "rubber stamping" of the Technical Advisor's opinion. (Appellant's Br. at 35.)

### III.    Conclusion

For the foregoing reasons, we will affirm.